```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA
```

SHERRI NICHOLS,                )
                               )
        Plaintiff,              )
                               )
v.                             ) Case No. CIV-07-267-KEW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
        Defendant.              )

**OPINION AND ORDER**

Plaintiff Sherri Nichols (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 2, 1954 and was 53 years old at the time of the ALJ's decision. Claimant completed her education through the ninth grade. Claimant previously worked as a labeler. Claimant alleges an inability to work beginning on February 1, 2003 due to diabetes, high blood pressure, and depression.

### Procedural History

On June 3, 2004, Claimant filed for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq*.). Claimant's application for benefits was denied initially and upon

reconsideration. On January 17, 2007, Claimant appeared at a hearing before ALJ C. Wayne Falkenstein in Oklahoma City, Oklahoma. By decision dated March 21, 2007, the ALJ denied Claimant's request for benefits. On June 29, 2007, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a labeler.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to (1) properly consider the medical source opinion of a nurse practitioner; (2) properly analyze Claimant's credibility; and (3) consider Claimant's obesity in his RFC assessment.

## Consideration of Medical Source Opinion

Claimant first challenges the ALJ's evaluation of Carolyn Stacy-Wilkins, a nurse practitioner. Claimant clearly received treatment for diabetes through medication with varying degrees of success. (Tr. 119, 192, 198, 200). On December 12, 2006, a Medical

4

Opinion Regarding Residual Functional Capacity form was completed by Ms. Stacy-Wilkins. (Tr. 182). The form provides limited information. Ms. Stacy-Wilkins indicates Claimant could perform light work for 4 or 5 hours in an 8 hour workday and sedentary work for 6 hours in an 8 hour workday. She also notes Claimant is restricted by pain, "at times" and fatigue, with uncontrolled diabetes and major depression and anxiety. Id.

The ALJ recognized Ms. Stacy-Wilkins restrictions. (Tr. 18). However, he afforded those restrictions "very little weight" because she was not a doctor or an acceptable treating source. (Tr. 19).

Ms. Stacy-Wilkins is not an acceptable medical source. 20 C.F.R. § 416.913(a). At best, she represents an "other medical source" information from which can be used to determine the severity of an impairments and the effect those impairments might have on the ability to work. 20 C.F.R. § 416.913(d)(1). While the same factors applied to consider treating medical sources "can be applied to opinion evidence from 'other sources.'" Soc. Sec. R. 06-3p; 20 C.F.R. § 416.927(d). Application of the factors is not expressly mandatory. The ALJ in this case did not specifically apply the factors, but did state the reason little weight was afforded Ms. Stacy-Wilkins' opinion was because she was not a treating source **and** she only provided information as to her opinion on Claimant's residual functional capacity – a matter reserved for Defendant.

5

(Tr. 19). This Court finds no error in the limited weight afforded to a source of this nature.

**Credibility Determination**

Claimant next asserts the ALJ improperly rejected her claims of restrictions in her ability to perform basic work activities. In addition to treatment for her diabetes, Claimant also experienced some complications associated with the condition. Claimant was diagnosed with diabetic related retinopathy, hammertoe on her left foot, bilateral hallus valgus, and hypertropic and mycotic nails. (Tr. 106, 123). Claimant was visually and cognitively impaired with some level of hearing problem. (Tr. 191).

Claimant was also treated for depression and anxiety. On January 8, 2004, Claimant was found to have memory and concentration problems but her diabetes, which was noted as poorly controlled, was considered to be the possible source for these conditions. (Tr. 134). On January 28, 2004, Claimant was slightly more oriented than on her previous visit, although she was noted as fatigued. Her problems were largely attributable to her living arrangements where she had no running water and needed further treatment for her diabetes. (Tr. 130).

On May 12, 2004, Claimant seemed more alert and oriented, dressed nicely with hair combed. Her mood was elevated. Claimant was dealing with "multiple psychosocial stressors" and was

6

attempting to manage her diabetes. (Tr. 120).

On May 27, 2004, Claimant appeared open, oriented, and cooperative with no suicidal ideations. She was thought to be progressing and coping with her problems. (Tr. 117).

On September 9, 2004, Claimant underwent a consultative examination by Dr. Robert Tobias. Claimant was found to be positive for depression, ambulated with a safe and stable gait albeit with a slow speed. She was assessed as having type 2 diabetes mellitus, hypertension, history of depression, substance abuse, and obesity. Claimant was 5'5" tall and weighed 189.2 pounds at that time. (Tr. 153-155).

A Psychiatric Review Technique form was completed on Claimant on September 16, 2004 by Carolyn Goodrich, Ph.D. She found Claimant's impairments were not severe, although she suffered from affective disorders. (Tr. 160). Dr. Goodrich diagnosed Claimant with Depression-N.S. (Tr. 163). No functional limitations were noted as a result of this condition. (Tr. 170).

On February 28, 2005, Claimant stated she was "very down" with decreased orientation. Claimant was cooperative, tearful, admitted to suicidal thoughts, but denied any specific plan or intent. Claimant appeared to suffer from depression exacerbated by psychosocial stressors and possibly poor control of her diabetes. Claimant reportedly had a GAF of 48. (Tr. 212).

On April 28, 2005, Claimant reported she was depressed, with problems coping with difficulties which occurred to her and her family. She appeared alert, oriented, and loosely connected with current events. She occasionally reported vague hallucinations but denies being paranoid. At times, she reported being suicidal. Claimant was diagnosed with major depression, schizetypal p.o. She was started on antidepressants. (Tr. 210).

On September 15, 2005, Claimant was once again found to be in crisis due to family tragedies. She was found to be alert, oriented, tearful, admitted to suicidal ideations but stated she could not do that to her grandchildren. Claimant's GAF was noted at 45. (Tr. 206).

On September 22, 2005, Claimant was again diagnosed with major depression. She was medicated for the condition. (Tr. 204).

On November 9, 2005, Claimant reported an improved mood and feeling less depressed. She appeared open, oriented, and cooperative. Her hygiene was improved. Her GAF was 50. (Tr. 202).

In his decision, the ALJ found Claimant's complaints of significant limitations in the ability to perform basic work activities not to be credible. He related Claimant's testimony from the administrative hearing concerning her ability to stand, walk, and the effect her depression has upon her activities. She reported she could not stand for 10 minutes because she becomes tired and has

8

pain when standing and walking. She stated she could not raise her arms to shoulder height, had foot pain and numbness and problems with her toenails causing her pain. She reportedly walked to her doctor's appointments for four miles, stopping 6 to 7 times along the way until her doctor told her not to do that anymore. She reported numbness in her hands, dizziness, blackouts, depression, sleep problems, memory and concentration problems, and crying spells. (Tr. 16).

Claimant reported her daily activities as fixing cereal, lying down and getting up around 1:00 p.m., takes a bath, watches television and goes back to sleep. She can use the microwave, wash dishes for five minutes, stays in her room, and is too tired to clean her house. Id.

The ALJ concluded the medical evidence did not support the limitations to which Claimant testified. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. The ALJ adequately referenced the evidence in the record, specifically Claimant's testimony and the medical records, in

9

arriving at his conclusion. This Court finds no error in his assessment of Claimant's credibility with regard to her ability to perform basic work activities.

**Consideration of Claimant's Obesity**

Claimant contends the ALJ should have considered her obesity in assessing her RFC. An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments).

At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. R. 02-1p. "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id.

Admittedly, the ALJ failed to reference obesity as a condition considered by him in reaching his decision. He does reference that

the consultative examiner found Claimant to be obese. (Tr. 15). Indeed, Claimant never raised obesity as a basis for her impairments or an exacerbation of her other conditions. (Tr. 69). No treatment was ever accorded Claimant for obesity. Other than speculating that Claimant's obesity exacerbated her other medical conditions, Claimant failed to meet her burden at step three to demonstrate obesity had any effect upon the disability determination. As recognized by the Tenth Circuit Court of Appeals, speculation upon the effect of obesity is discouraged.[2] *See*, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.). Upon review of the record, therefore, this Court finds the ALJ was not required to discuss the effects of obesity.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 29th day of September, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

11